# FOR PUBLICATION



FILED
Nov 27 2013, 5:53 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**WILLIAM VAN DER POL, JR.**
McCalla, Alabama

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**IAN MCLEAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

JOSEPH EVERROAD,                        )
                                        )
    Appellant-Defendant,                )
                                        )
        vs.                            )   No.  55A01-1303-CR-107
                                        )
STATE OF INDIANA,                       )
                                        )
    Appellee-Plaintiff.                 )

APPEAL FROM THE MORGAN SUPERIOR COURT
The Honorable G. Thomas Gray, Judge
Cause No. 55D01-1207-FB-926

**November 27, 2013**

**OPINION - FOR PUBLICATION**

**BAILEY, Judge**

## Case Summary

Joseph Everroad ("Everroad") appeals his conviction for Robbery, as a Class B felony,[1] presenting the sole issue of whether the trial court admitted evidence in contravention of his Sixth Amendment right of confrontation. We affirm.

## Facts and Procedural History

On June 4, 2012, at around 9:00 a.m., Amanda Johnson, a teller at the First Merchants Bank in Morgantown, Indiana, was robbed at gunpoint. Subsequently, several individuals (including Everroad's former employer and probation officers) identified Everroad as the man captured on the bank's surveillance video.

Everroad was charged with Robbery and Theft, tried before a jury, and found guilty as charged. The trial court entered a judgment of conviction only upon the Armed Robbery count and sentenced Everroad to twenty years imprisonment. He now appeals.

## Discussion and Decision

At trial, the State called as a witness Jim Thomas ("Thomas"), an investigator for the Morgan County Prosecutor's Office. Thomas had been responsible for serving a search warrant on AT & T Mobile ("AT & T") to obtain Everroad's cell phone records. Anticipating that Thomas would likely testify that Everroad's cell phone records placed him near the robbery location on June 4, 2012, Everroad requested a preliminary hearing on Thomas's professional qualifications and the admissibility of his testimony.

During the hearing outside the presence of the jury, Thomas testified that he had

---

[1] Ind. Code § 35-42-5-1.

2

attended a three-day seminar in 2008 to receive training in "forensic cell phone data." (Tr.

382.) On cross-examination, Thomas admitted that he had not attended a subsequent training

session and the following exchange took place:

> Defense Counsel: You have no idea whether or not there's been any changes
> in that information, how they generate that, how you're to interpret it, since
> your training four plus years ago?
>
> Thomas: I received information from, I guess you could say the providers,
> which give a legend as far as how to interpret the calls, or whatever.
>
> Defense Counsel: But you would agree that legend is not as narrowed and
> certified by AT & T, it is not part of the packet that is certified in this case? . . .
> And the State just gave me a wink and a nod that they acknowledge it's not in
> the certified packet with the [sic] AT & T. Therefore, you're limited to what
> you learned in 2008 in terms of non-hearsay documentation, true statement? …
> Okay, in terms of non-hearsay documentation, your sole training would be in
> 2008?
>
> Thomas: Correct.

(Tr. 387-88.) Everroad then asserted that he "would have a confrontation of [sic] cross-

examination rights that we have not waived as to that legend." (Tr. 390.) The document,

"Legend for AT & T Mobility Records" (in relevant part, providing "Key Character

Definitions," "Suffix Definitions," and "Key Prefix Definitions"), (hereinafter, "the legend"),

was marked for admission into evidence as Exhibit 34.[2] Everroad's counsel then reiterated

his position:

> Judge, just to clarify, it is our belief that starting at Crawford vs. Washington,
> likely the most recent elicitation from [the] Supreme Court, (inaudible)
> confrontation and cross examination, is as outlined in Williams vs. Illinois.
> We believe that having this expert testify is going to violate the Defendant's
> Sixth Amendment right to confrontation and cross examination. Not as to the

---

[2] Documents were primarily admitted into evidence by stipulation of the parties; as such, exhibits are not labeled either State exhibits or defense exhibits.

AT & T records themselves, but as to the interpretation of those AT & T records by a use of a hearsay document. We also do not believe that he meets the qualifications under either 701 or 702 to interpret those records.

(Tr. 398.) The trial court ruled that Thomas could testify before the jury as a skilled witness and further concluded, with respect to the AT & T legend: "It is merely an aid and a tool that this witness is using to make a determination of what the short hand abbreviations are that AT & T is using in the document that they sent to him." (Tr. 402.)

Everroad lodged his continuing objection. Additionally, when Thomas described Exhibit 34 to the jury as "a legend that explains how they interpret the acronyms that they put on there, billing records on [sic] the records that I received," Everroad renewed his objection that his Sixth Amendment right of confrontation was being violated. Ultimately, Thomas testified that, from 8:35 a.m. to 9:01 a.m. on June 4, 2012, Everroad's cell phone was "hitting off of a tower" located in Brown County, Indiana.[3] (Tr. 425.)

On appeal, Everroad no longer claims that Thomas lacked sufficient qualifications to interpret AT & T records. However, he contends that the legend was hearsay upon which Thomas relied to support his conclusion of location, the drafter of the legend should have been called to testify, and the omission violated his right of confrontation as recognized in Crawford v. Washington, 541 U.S. 36, 51, 124 S. Ct. 1354 (2004).

The Sixth Amendment, applicable to the states through the Fourteenth Amendment, requires: "In all criminal prosecutions, the accused shall enjoy the right … to be confronted with the witnesses against him." U.S. Const. amend. VI. The Confrontation Clause bars

---

[3] The tower is approximately one mile south of the First Merchants Bank in Morgantown.

admission of a witness's testimony against a defendant unless the witness appears at trial or is unavailable to testify and the defendant had a prior opportunity for cross-examination. Pendergrass v. State, 913 N.E.2d 703, 705 (Ind. 2009), cert. denied, 130 S. Ct. 3409 (2010). However, the Confrontation Clause applies only to testimonial statements, that is, "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." Crawford, 541 U.S. at 51 (quoting 2 N. Webster, An American Dictionary of the English Language (1828)). More precisely, a testimonial statement for Sixth Amendment purposes is one made to establish a fact in a criminal proceeding. See Bullcoming v. New Mexico, ___ U.S. ___, 131 S. Ct. 2705, 2716 (2011).

Everroad implicitly argues that Exhibit 34, the legend, is testimonial in nature, analogizing his circumstances to those of the defendant in Williams v. Illinois, ___ U.S. ___, 132 S. Ct. 2221 (2012), a case involving the admission of DNA results. In Williams, vaginal swabs taken from a rape victim were submitted to Cellmark, an independent, private laboratory. Cellmark then produced a report transmitting a DNA profile that Cellmark analysts had purportedly developed from the vaginal swabs. Using the DNA profile obtained from Cellmark, Sandra Lambatos ("Lambatos"), a forensic specialist at the Illinois State Police Lab, searched the Illinois database and found a matching profile, that of Williams. At trial, Williams unsuccessfully lodged a Confrontation Clause objection and Lambatos was permitted to testify that the DNA profile of Williams's blood in the state database matched a male DNA profile Cellmark had created from semen in the victim's vaginal swabs. Although Cellmark's written report was not introduced into evidence, Lambatos was allowed to rely

5

upon it during her expert testimony. No witness having personal knowledge of Cellmark's development of the putative offender's DNA profile testified at trial.

Five justices concluded that the Confrontation Clause was not violated by Lambatos's testimony because the information in Cellmark's report was not testimonial. Four justices agreed that the objective purpose of the report was to catch a rapist as opposed to creating evidence for trial. Williams, 132 S. Ct. at 2244. Justice Thomas disagreed with the rationale of the lead opinion but concurred in the judgment. According to Justice Thomas, the Cellmark report was not testimonial because it "lacks the solemnity of an affidavit or deposition, for it is neither a sworn nor a certified declaration of fact." Id. at 2260.

Williams does not provide Everroad with the result that he desires. Indeed, Everroad's argument that Exhibit 34 is testimonial in nature is even less compelling than that in Williams, where a declaration of fact rested in part on reporting of an analysis performed by another analyst and lab. Exhibit 34 is simply a glossary of terms to guide the interpretation of an AT & T bill, providing definitions corresponding to abbreviations on the bill. For example, IN means "Inbound Message" and OUT means "Outbound Message"; VMN means "VoiceMail message is waiting notification." (Ex. 34.) It is not a solemn declaration for the purpose of establishing some fact. Nor was the legend compiled to establish a fact in a criminal proceeding. As such, it is not testimonial.

## Conclusion

Everroad enjoyed the right to confront Thomas, who testified at trial and was subject to cross-examination. The legend to which he referred was not testimonial. Everroad has

6

shown no deprivation of his Sixth Amendment right of confrontation.

Affirmed.

MAY, J., and BRADFORD, J., concur.