


FILED

Sep 10 2019, 12:01 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE

# Indiana Supreme Court

Supreme Court Case No. 49S00-1707-DI-472

## In the Matter of
## Brent Welke,
*Respondent.*

Decided: September 10, 2019

Attorney Discipline Action

Hearing Officer Heather A. Welch

**Per Curiam Opinion**

Chief Justice Rush, and Justices Massa, Slaughter, and Goff concur.

Justice David dissents.

**Per curiam.**

We find that Respondent, Brent Welke, committed attorney misconduct by incompetently representing a client, improperly using a nonlawyer assistant, and knowingly making false statements of material fact to the Commission. For this misconduct, we conclude that Respondent should be suspended for at least three years without automatic reinstatement.

This matter is before the Court on the report of the hearing officer appointed by this Court to hear evidence on the Indiana Supreme Court Disciplinary Commission's disciplinary complaint, and on the post-hearing briefing by the parties. Respondent's 1991 admission to this state's bar subjects him to this Court's disciplinary jurisdiction. *See* IND. CONST. art. 7, § 4.

# Procedural Background and Facts

In 2010 "Client" was charged with murder after fatally stabbing a man. Client, whose English language skills were extremely poor, maintained he acted in self-defense. An experienced public defender initially represented Client, assisted by an interpreter. As the trial date approached, the public defender and deputy prosecutor were negotiating a plea deal that contemplated a plea to voluntary manslaughter and either a fixed or maximum sentence of 30 years. The public defender believed that Client would be unable to prevail on a self-defense argument but that he had a compelling case in mitigation.

During this time, Respondent's nonlawyer assistant, Joseph Everroad, ingratiated himself with Client's family, told them the public defender would "sell out" Client, and – together with Respondent – persuaded them that Respondent and Everroad could either successfully pursue a self-defense argument at trial or otherwise obtain a better plea deal for

Client.[1] Client's family hired Respondent and paid him a $6,000 retainer, $1,000 of which was earmarked for an interpreter. The trial date was continued following Client's change in representation.

Respondent had not previously handled a murder case and had little or no experience with major felonies. Neither Respondent nor Everroad had the language fluency to effectively communicate with Client about his case. Respondent did not hire an interpreter. Respondent did not meet with Client at the jail and did little or no work on the case, instead delegating these tasks to Everroad. During one meeting with Client, Everroad brought an untrained and unpaid woman who needed community service credit for her own criminal conviction to serve as an interpreter, and through that woman Everroad attempted to assure Client he had a strong self-defense case. Everroad did not bring an interpreter to other meetings with Client. Everroad explained the purpose of these meetings was simply to "just keep [Client] happy so [Respondent] could get the rest of his money out of the client" and added "we didn't even talk about the case. We were talking about other things. Cars – things like that." (Tr. at 94, 97).

Shortly before the trial date, Respondent viewed post-mortem photographs of the victim for the first time and came to believe a self-defense or voluntary manslaughter strategy at trial would be untenable. At a final pretrial conference, the State offered a plea to voluntary manslaughter with a fixed sentence of 40 years. Respondent attempted to accept the offer without consulting with Client, but after Client complained, the court indicated the matter would proceed to trial.

Trial commenced three days later, on April 11, 2011. Respondent was not adequately prepared and did not have a defense interpreter on hand to communicate with Client. During a recess, using Client's friend as an

---

[1] Everroad is a convicted murderer who was hired by Respondent following his release from prison. After Respondent's representation of Client had concluded, Everroad robbed a bank at gunpoint. Everroad was convicted and sentenced to twenty years' imprisonment. *Everroad v. State*, 998 N.E.2d 739 (Ind. Ct. App. 2013).

interpreter, Respondent communicated the State's latest offer (a plea to murder with a fixed term of 45 years) to Client and advised Client to take the deal because his defense was weak. Client accepted the offer and pled guilty to murder with a fixed sentence of 45 years.[2]

During the Commission's investigation, Respondent falsely told the Commission that Client was fluent in English and that he had visited Client in jail several times.

The Commission charged Respondent with violating Indiana Professional Conduct Rules 1.1, 1.3, 1.4(a)(2), 1.4(b), 5.3(b), and 8.1(a). At the final hearing in this matter, Respondent contested only the Rule 8.1(a) charge (involving dishonesty toward the Commission) and admitted the remaining charges. The hearing officer filed her report to this Court on April 29, 2019, finding Respondent committed violations as charged and recommending a lengthy suspension without automatic reinstatement.

## Discussion and Discipline

Although Respondent has petitioned this Court for review, he does not challenge any of the hearing officer's conclusions with respect to the charged rule violations, including the sole charge contested during the final hearing. Having conducted our own *de novo* examination of the materials before us, we likewise conclude that Respondent violated the following Indiana Rules of Professional Conduct:

> 1.1: Failure to provide competent representation.
>
> 1.3: Failure to act with reasonable diligence and promptness.
>
> 1.4(a)(2): Failure to reasonably consult with a client about the means by which the client's objectives are to be accomplished.

---

[2] Client's guilty plea later was vacated in post-conviction proceedings upon findings that Client received ineffective assistance of counsel and that his plea was not entered knowingly, intelligently and voluntarily. Client's case was retried in late 2016, a jury found Client guilty of murder, and the court sentenced Client to 55 years in prison.

1.4(b): Failure to explain a matter to the extent reasonably necessary to permit a client to make informed decisions.

5.3(b): Failure to make reasonable efforts to ensure that the conduct of a nonlawyer employee over whom the lawyer has direct supervisory authority is compatible with the professional obligations of the lawyer.

8.1(a): Knowingly making a false statement of material fact to the Disciplinary Commission in connection with a disciplinary matter.

Respondent challenges three findings of fact made by the hearing officer. None of these findings are material to the ultimate conclusions reached by the hearing officer, and only the first two have potential bearing on sanction.

Respondent first challenges the hearing officer's finding that had Client remained represented by the public defender, "at the very wors[t]" Client would have been convicted of voluntary manslaughter and received an executed sentence of 30 years. Respondent correctly observes that this outcome had not yet reached the point of formal acceptance by the parties and the trial court, and he points to earlier and subsequent offers made by the State for a 40-year sentence, but Respondent's argument misses the forest for the trees. Not only does the evidence clearly reflect a 30-year sentence had been placed on the bargaining table by the State and was reasonably within reach for Client immediately prior to the change in representation, but Respondent's attempt to manufacture uncertainty on this point glosses over the fact that either of these case outcomes – 30 or 40 years for voluntary manslaughter – would have been better for Client than the outcome obtained through Respondent's woefully inadequate representation.

Respondent next challenges the hearing officer's finding that he had not prepared at all for *voir dire* or for the examination of witnesses, pointing to his own self-serving affirmative answers to leading questions from his counsel. (*See* Tr. at 115-116). But Respondent contradicted himself on more probing questioning from the Commission both prior to and during the final hearing (*id.* at 122-123; Ex. 19 at 54-55), Respondent

admits having failed to provide Client with competent and diligent representation, and on the sole contested charge the hearing officer expressly found Respondent's testimony during the final hearing to have been untruthful. (*See* HO's Report at 14, 28).

Finally, Respondent argues the hearing officer should have afforded more weight to testimony of Client's former work supervisor suggesting that Client may have had a marginally better English-language proficiency than other evidence indicated. But Respondent "concedes that communicating with a supervisor of a kitchen staff and communicating about legal matters are two very different things, and that he should have retained an interpreter to assist him in communicating with [Client]." (Br. in Support of Pet. for Rev. at 8). We find any possible incremental differences in testimony on this point wholly immaterial to any matter at hand.

We turn now to factors bearing more directly on the question of appropriate sanction. This is Respondent's fourth disciplinary case.[3] While the misconduct in each case has differed slightly, the cases collectively paint the picture of an attorney whose primary motivation appears to be the collection of legal fees rather than the provision of a valuable service for his clients.

The instant case – involving what the hearing officer aptly described as a "bait and switch" representation – is by far the most egregious of Respondent's four disciplinary cases. Prior to Respondent's involvement, Client was being capably represented by an experienced public defender who was meaningfully consulting with Client and who was on the cusp of achieving on Client's behalf a negotiated case resolution carefully crafted to account for the relative strengths and weaknesses of Client's case. However, Respondent and Everroad – exploiting inaccurate stereotypes

---

[3] *See Matter of Welke*, 53 N.E.3d 408 (Ind. 2016) (30-day suspension for false or misleading advertising); *Matter of Welke*, 772 N.E.2d 992 (Ind. 2002) (30-day suspension for charging unreasonable fees, failing to withdraw from representation upon being discharged by a client, and failing to refund unearned fees); *Matter of Welke*, No. 13S00-9808-DI-460 (private administrative admonition).

about public defenders and the particular vulnerability of defendants and their family members to unrealistic expectations – lured Client away at the last minute with the promise that a better outcome could be had, for a price. That promise was at best uninformed and at worst outright false; and even a comparable outcome became impossible to achieve when Respondent neglected the representation after collecting his fee. In the end, switching from the public defender to Respondent earned Client a lighter wallet, comprehensively shoddier legal representation, weakened bargaining power, the inability to meaningfully participate in his own defense, and ultimately a higher-level conviction and several more years in prison than he otherwise would have received. Whether measured in terms of process or outcome, the prejudice suffered by Client as a result of Respondent's misconduct was severe.

The Commission has not sought disbarment in this case. The hearing officer recommended a lengthy suspension without automatic reinstatement due to Respondent's prior discipline, the significant damage caused by Respondent's misconduct in this case, and the risk of harm to potential future clients. We agree with the hearing officer's recommendation and conclude that a suspension of at least three years without automatic reinstatement is appropriate discipline for Respondent's misconduct.

## Conclusion

The Court concludes that Respondent violated Professional Conduct Rules 1.1, 1.3, 1.4(a)(2), 1.4(b), 5.3(b), and 8.1(a). For Respondent's professional misconduct, the Court suspends Respondent from the practice of law for a period of not less than three years, without automatic reinstatement, beginning October 22, 2019. Respondent shall not undertake any new legal matters between service of this opinion and the effective date of the suspension, and Respondent shall fulfill all the duties of a suspended attorney under Admission and Discipline Rule 23(26). At the conclusion of the minimum period of suspension, Respondent may petition this Court for reinstatement to the practice of law in this state, provided Respondent pays the costs of this proceeding, fulfills the duties

of a suspended attorney, and satisfies the requirements for reinstatement of Admission and Discipline Rule 23(18). The costs of this proceeding are assessed against Respondent, and the hearing officer appointed in this case is discharged.

Rush, C.J., and Massa, Slaughter, and Goff, JJ., concur.
David, J., dissents regarding the sanction imposed, believing disbarment is warranted.

ATTORNEYS FOR RESPONDENT
Dina M. Cox
Neal Bowling
Kelly H. Eddy
Indianapolis, Indiana

ATTORNEYS FOR INDIANA SUPREME COURT
DISCIPLINARY COMMISSION
G. Michael Witte, Executive Director
Angie L. Ordway, Staff Attorney
Indianapolis, Indiana